UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EDWARD WASHELL,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>  Defendant. | No. 1:14-CV-3071-JTR<br><br>ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 14, 18. Attorney Cory J. Brandt represents Edward Washell (Plaintiff); Special Assistant United States Attorney Diana Andsager represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (SSI) on September 10, 2010, alleging disability

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

since July 18, 2010, due to COPD, spinal stenosis, hepatitis C and arthritis in knees and hips. Tr. 206. The applications were denied initially and upon reconsideration. Administrative Law Judge (ALJ) Ilene Sloan held a hearing on December 19, 2012, Tr. 50-73, and issued an unfavorable decision on February 7, 2013, Tr. 9-19. The Appeals Council denied review on April 22, 2014. Tr. 1-4. The ALJ's February 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on May 29, 2014. ECF No. 1, 4.

## STATEMENT OF FACTS

Plaintiff was born on March 6, 1965, and was 45 years old on the alleged onset date, July 18, 2010. Tr. 55, 202, 206. Plaintiff went to school through the ninth grade and has not obtained a GED. Tr. 55, 207, 289. He stated he last worked in April 2008 as a welder. Tr. 55, 206-207. His "Disability Report" indicates the reason he stopped working in 2008 was "I was let go because I was late a few times." Tr. 206. He currently supports himself with state assistance and by working odd jobs. Tr. 55-56, 63. At the time of the administrative hearing, Plaintiff was working a couple days a week, a total of about 10 hours, for a friend who owned a tree service. Tr. 56-57. He indicating he performed this part-time work putting branches in a chipper every couple of weeks. Tr. 57. Plaintiff testified at the administrative hearing he had also worked about 10 hours a week from December 2009 to April 2010 cutting and welding steel for an artist who worked with metal. Tr. 57-58. He stated he could not go back to work as a welder or perform full-time work for the tree service company because "my back won't handle all that work." Tr. 58. He indicated he would likely miss 10 to 15 days of work in a typical month because of his back. Tr. 67.

Plaintiff testified back pain made it difficult for him to bend over and pick things up. Tr. 62. He stated standing affects him, and he can only sit for 30 minutes to an hour before he has to stand and walk around. Tr. 63. He indicated

he needs to lie down for an hour or more, two to three times a day, because of his back pain. Tr. 65. Plaintiff also described numbness in his hands as a result of his back issue which made it difficult to hold things like a rake or hammer. Tr. 59. He stated his sleep was also affected, and he only gets about three or four hours of sleep at night. Tr. 66, 223. Nevertheless, at the time of the administrative hearing, Plaintiff was not taking medications for his back and was not receiving regular medical care. Tr. 62-63. He stated he was not doing anything to relieve his back pain other than lying down throughout the day. Tr. 65.

Plaintiff testified his typical day consists of staying at home watching TV or listening to the radio. Tr. 65-66. The "Function Report" Plaintiff filled out on November 2, 2010, indicates his daily activities are watching TV; using a computer; sitting outside; making breakfast, lunch and dinner; and going to see friends. Tr. 222. It also indicates Plaintiff did laundry, performed light household repairs and shopped for groceries once a week. Tr. 224-225. He wrote he would visit, play video games and/or go to the movies with friends a few times a week. Tr. 226.

When asked about alcohol and drugs at the December 19, 2012, administrative hearing, he indicated he had not had a drink in five months and was attending AA meetings, but last used marijuana the day prior to the hearing and was smoking marijuana "about every day." Tr. 59-60. Plaintiff stated marijuana was helpful in reducing his back pain. Tr. 66. Plaintiff testified he also smoked less than a pack of cigarettes per day. Tr. 65.

May 4, 2010, imaging of Plaintiff's cervical spine revealed multilevel degenerative changes of the cervical spine. Tr. 271-272. May 4, 2010, imaging of Plaintiff's lumbar spine revealed moderate to marked degenerative disk disease at L3/L4, possibly post infectious; mild to moderate L2/L3 and L4/L5 degenerative disk disease; and probable, bilateral L5 pars interarticularis defects. Tr. 273-274. June 18, 2010, MRIs of Plaintiff's cervical and lumber spine revealed multilevel

degenerative disk changes. Tr. 275-280. These image reports predate the July 18, 2010, alleged onset date.

Plaintiff was examined by Harry Burger, DO, on December 4, 2010. Tr. 288-291. Dr. Burger indicated Plaintiff reported smoking a pack of cigarettes a day despite using inhalers, regularly smoking marijuana, and drinking at least a six-pack a day. Tr. 288. It was noted Plaintiff "is aware that he is injuring himself and that he continues to injure himself." Tr. 288. Plaintiff reported prior intravenous drug use, which resulted in a hepatitis C diagnosis in 2006, but denied current use of IV drugs. Tr. 288-289. Plaintiff informed Dr. Burger he could stand for 30 minutes, sit for 15 minutes, walk a mile, and lift 20 to 30 pounds. Tr. 289.

On exam, Dr. Burger noted Plaintiff was in no acute distress, ambulated normally, was able to get on and off the table and up and out of the chair well, and could dress and undress himself well. Tr. 290. With respect to the spine and extremities, Dr. Burger indicated as follows:

> Reveal normal-appearing lordosis and kyphosis to the spine. No disc space protrusions, masses, deformities or tenderness. Extremities reveal pulses to be present, strong and equal bilaterally in the upper and lower extremities. No edema, cyanosis, clubbing, swelling, redness or effusions . . . . [T]he hips, knees and ankles appear normal. No effusion, no instability signs, no deformities. The shoulders, elbows and wrists appear normal. No signs of ligamentous or nerve entrapment or muscle atrophy. Grip strength is strong 5/5 right and left without pain. His gait reveals no limp or antalgia today or assisting devices. Ranges of motion reveals normal movement of the elbows, forearms, wrists, shoulders, cervical spine, and lumbar spine. He can reach down and touch his shoes from a standing position which is normal anterior flexion of 90/90 with no complaints of low back or leg pain. Hips, knees and ankles move normally. He can lay back on the table, he can sit straight back up, he can straight leg raise normally supine and sitting with no complaints of low back or left thigh pain. He can walk on his heels, walk on his toes, squat, do heel-to-toe. No ulcerations, no varicosities.

Tr. 290. Dr. Burger indicated that while Plaintiff sustained a low back injury in 1994, Plaintiff has had no additional injuries and it has not restricted him over the

years.  Tr. 291.  Dr. Burger related that Plaintiff's reason for not working was that he could not find work.  Tr. 291.

On April 13, 2011, state agency reviewing physician Mark A. Werner, M.D., completed a physical residual functional capacity assessment form finding Plaintiff was limited to medium exertion level work with the additional restrictions of needing to avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases, poor ventilation, etc., due to possible COPD.  Tr. 306-313.  Dr. Werner considered the entire record, including the 2010 imaging reports, and specifically noted Dr. Burger's fairly normal examination results.  Tr. 311, 313.

On June 30, 2011, state agency reviewing physician Allen Gelinas, M.D., reviewed the record and concurred with Dr. Werner's findings.  Tr. 111.  Dr. Gelinas opined that the assessment of Dr. Werner was well within the scope of the records.  Tr. 111.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by

substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see, Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

The ALJ found Plaintiff had not engaged in substantial gainful activity since July 18, 2010, the alleged onset date. Tr. 12. At step two, the ALJ determined Plaintiff had the severe impairments of degenerative disk disease of the cervical and lumbar spine. Tr. 12. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments.  Tr. 14.  The ALJ assessed Plaintiff's RFC and determined he could perform light exertion level work, except that he must avoid concentrated exposure to extreme cold, fumes, odors, dust, gases and poor ventilation and avoid concentrated exposure to vibration and hazards such as moving machinery and unprotected heights.  Tr. 14.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a welder.  Tr. 18.  However, at step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that Plaintiff could perform that exist in significant numbers in the national economy, including the jobs of cafeteria attendant, housekeeping cleaner, and production assembler.  Tr. 18-19.  The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 18, 2010, the alleged onset date, through the date of the ALJ's decision, February 7, 2013.  Tr. 19.

**ISSUES**

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) improperly rejecting his subjective complaints; (2) failing to fully and fairly develop the record; and (3) presenting a hypothetical to the vocational expert which failed to account for all of his limitations.

**DISCUSSION**

**A.     Plaintiff's Credibility**

Plaintiff contends the ALJ erred by failing to provide valid reasons for rejecting his subjective complaints.  ECF No. 14 at 8-13.  The Court agrees.

It is the province of the ALJ to make credibility determinations.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231

(9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v.* Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible. Tr. 15.

With regard to this credibility determination, the ALJ indicated the record reflected noncompliance issues. Tr. 15. Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ cited a report from May 2010, two months prior to the alleged onset date, which indicates Plaintiff left an emergency room without being treated by a physician. Tr. 15, 269. Not only is this record from outside the relevant time period in this matter, *see Fair v. Bowen*, 885 F.2d at 600 (medical opinions that predate the alleged onset of disability are of limited relevance), there is no evidence explaining why Plaintiff left the emergency room at that time. The ALJ's assertion that this report demonstrated noncompliance is unsupported.

The ALJ additionally mentioned Plaintiff's history of substance abuse as bearing on Plaintiff's credibility. Tr. 16. An ALJ may properly consider evidence

of a claimant's substance use in assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding); *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered drug-seeking behavior).

The ALJ noted Plaintiff admitted to Dr. Burger that he regularly smoked marijuana, but was not part of a medical marijuana program, and that he drank at least a six-pack a day even though he had been diagnosed with hepatitis C in 2006. Tr. 16. There are, however, no noted inconsistencies regarding Plaintiff's report of substance use and no evidence of record that Plaintiff displayed drug-seeking behavior. Moreover, Plaintiff testified at the administrative hearing that he could not go back to work because "my back won't handle all that work," Tr. 58, and indicated back issues would likely cause him to miss 10 to 15 days of work in a typical month, Tr. 67. There is no explanation by the ALJ as to how Plaintiff's consumption of alcohol and marijuana use aggravated his back impairment or otherwise diminished his overall credibility. It was inappropriate for the ALJ to find Plaintiff's use of alcohol and marijuana reduced his credibility. Tr. 16.

The ALJ indicated the medical evidence of record does not support Plaintiff's assertions about his inability to work. Tr. 15. A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).

The ALJ noted Dr. Burger's independent physical examination was unremarkable regarding Plaintiff's neck/back problems and the record did not contain any evidence of surgical intervention or more invasive treatment. Tr. 15, 290-291. As noted by the ALJ, Dr. Burger's report identified Plaintiff's reason for

not working as an inability to find work, not as a result of limitations stemming from injuries/impairments. Tr. 17, 291. In addition, Plaintiff testified at the administrative hearing that he was not taking medications for his back and was not receiving regular medical care. Tr. 62-63. He stated he was not doing anything to relieve his back symptoms other than periodically lying down during the day. Tr. 65. Nevertheless, April and June 2010 imaging of Plaintiff's cervical and lumbar spine revealed multilevel degenerative disk changes and evidence of degenerative disk disease. Tr. 271-280. The record is thus not devoid of reports evidencing Plaintiff's severe back impairment. Plaintiff's complaints of neck and back pain are not unsubstantiated by the objective evidence of record.

The ALJ further noted the record revealed Plaintiff had worked with his allegedly disabling impairments. Tr. 15. The ability to work can be considered in assessing credibility. *Bray v. Comm'r Social Security Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding the ALJ properly discounted a plaintiff's testimony because she recently worked as a personal caregiver for two years and had since sought out other employment).

The ALJ indicated Plaintiff testified at the administrative hearing that he was working a couple days a week, a total of about 10 hours, for a friend who owned a tree service. Tr. 15, 56-57. Plaintiff stated he performed this part-time work every couple of weeks. Tr. 15, 57. Plaintiff testified the job consisted of putting branches in a chipper, and he would lift up to 30 pounds and would have to bend over to pick up the branches. Tr. 15, 57, 63-64. The ALJ also noted Plaintiff reported he had experienced neck pain since he was a teenager, with chronic pain since 2006, which showed Plaintiff had been able to work for several years despite his alleged symptoms. Tr. 15.

In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate a claimant's "ability to work on a *sustained* basis." 20 C.F.R. § 404.1512(a) (emphasis added). "Occasional symptom-free periods—

and even the sporadic ability to work—are not inconsistent with disability." *Lester*, 81 F.3d at 833 (citing *Leidler v. Sullivan*, 885 F.2d 291, 292 n. 3 (5th Cir. 1989)). Furthermore, according to the Social Security Rules, in evaluating a claimant's RFC, the ALJ's assessment must consider an individual's ability to perform "sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02–01p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p at 1. There is no evidence of record that Plaintiff has worked on a regular and continuous basis since the alleged onset date.

Lastly, the ALJ held that Plaintiff's ability to "perform a full range of daily activities" was inconsistent with the nature, severity and subjective complaints of Plaintiff. Tr. 16. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d at 603.

The ALJ indicated Plaintiff reported shopping, using public transportation and the ability to drive a car; he watched television, used a computer, sat outside and prepared simple meals; he visited with friends and performed light household chores, like laundry and repairs; and he was able to walk a mile or more without difficulty and play video games with friends several times a week. Tr. 16, 222-226, 313. While it was not improper for the ALJ to consider Plaintiff's level of activity in this case when assessing his credibility, the Ninth Circuit has held that one does not need to be "utterly incapacitated" to be disabled. *Fair v. Bowen*, 885 F.2d at 603 ("claimant's ability to engage in activities that were sporadic and punctuated with rest, such as housework, occasional weekend trips, and some exercise, do not support a finding that he can engage in regular work activities"). As argued by Plaintiff, his reported daily activities are not necessarily inconsistent with his description of limitations.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 11

1989). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). However, based on the foregoing, the Court concludes that the rationale provided by the ALJ for discrediting Plaintiff is not clear and convincing. The Court finds that a remand for a proper credibility determination is necessary in this case.

**B.     Additional Arguments**

Plaintiff next contends the ALJ erred by failing to fully and fairly develop the record. ECF No. 14 at 13-14. Plaintiff opines that the findings of the only consultative examiner of record, Dr. Burger, contrast with the 2010 pre-onset date imaging results, thus the ALJ "was required to further develop the record in order to support a finding of not disabled." ECF No. 14 at 14. Plaintiff also argues the ALJ erred by not including all of Plaintiff's functional limitations in her RFC determination, thus resulting in the presentation of an incomplete hypothetical to the vocational expert (VE). ECF No. 14 at 15-16.

Plaintiff ultimately bears the burden of establishing his disability. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."); *see also* 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled."). However, the ALJ does have a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). An ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper

evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

As determined above, in light of the ALJ's erroneous credibility determination, this matter will be remanded for additional proceedings. On remand, the ALJ shall reconsider Plaintiff's statements and testimony. The ALJ shall additionally reassess Plaintiff's RFC, taking into consideration the opinions of Dr. Burger, Tr. 288-291, and the state agency reviewing physicians, Drs. Werner and Gelinas, Tr. 111, 306-313; the April and June 2010 imaging of Plaintiff's cervical and lumbar spine, Tr. 271-280; and all other medical evidence of record relevant to Plaintiff's claim for disability benefits. The ALJ shall direct Plaintiff to undergo a new consultative physical examination. At the new administrative hearing, the ALJ, if warranted, shall elicit the testimony of a medical expert to assist the ALJ in formulating a new RFC determination. The ALJ shall present the new RFC assessment to a vocational expert to help determine if Plaintiff is capable of performing any other work existing in sufficient numbers in the national economy.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for an immediate award benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

On remand, the ALJ shall reexamine Plaintiff's statements and testimony and reassess Plaintiff's RFC, taking into consideration the opinions of Dr. Burger, and the state agency reviewing physicians, the April and June 2010 imaging reports, and all other medical evidence of record relevant to Plaintiff's claim for

disability benefits.  The ALJ shall develop the record further by requiring Plaintiff to undergo a new consultative physical examination prior to a new administrative hearing and, if warranted, by eliciting the testimony of a medical expert to assist the ALJ in formulating a new RFC determination.  The ALJ shall obtain supplemental testimony from a vocational expert and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered in favor of Plaintiff,** and the file shall be **CLOSED**.

DATED February 18, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE